IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

KATHY M. PATTERSON                                                                              PLAINTIFF

v.                                            Civil No. 07-2146

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                                                 DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Kathy Patterson, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claims for period of disability, disability insurance benefits (DIB), and supplemental security income ("SSI") pursuant to Titles II and XIV of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 416(i) and 423. In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**Procedural Background**

The plaintiff filed her applications for DIB and SSI on April 27, 2005, alleging an onset date of May 11, 2003, due to personality disorder, depression, ankle pain, high blood pressure, and numbness in the leg. (Tr. 47-49, 78, 237-240). An administrative hearing was held on September 20, 2006. (Tr. 264-298). Plaintiff was present and represented by counsel.

At the time of the administrative hearing, plaintiff was 31 years old and possessed a high school education. (Tr. 270). The record reveals that she had past relevant work experience ("PRW") as a housekeeper, retail department manager, food service worker, and salesperson. (Tr. 18).

**AO72A**
**(Rev. 8/82)**

On December 18, 2006, the Administrative Law Judge ("ALJ") determined that plaintiff suffered from a combination of severe impairments, but did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (Tr. 18). He then concluded that plaintiff maintained the RFC to occasionally lift ten pounds; stand and walk for a total of two hours and sit for a total of six hours; and perform occasional postural activity. (Tr. 16). In addition, the ALJ found plaintiff had slight limitations in completing a normal workday or workweek; accepting instructions; responding appropriately; getting along with coworkers and peers; and responding appropriately to work changes, and would have moderate limitations in maintaining concentration, maintaining regular attendance, being punctual, and interacting appropriately with the public. (Tr. 16). With the assistance of a vocational expert, the ALJ determined that plaintiff could perform work as a telephone solicitor, account clerk, and assembler. (Tr. 18).

The plaintiff appealed this decision to the Appeals Council, but her request for review was denied on October 26, 2007. (Tr. 3-6). Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision. (Doc. # 9, 10).

**Applicable Law**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards*

2

*v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s)

3

prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. §§ 404.1520, 416.920. Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920.

**Evidence Presented**:

The record shows that in a 1996 car accident, plaintiff fractured her right ankle and cut her right knee. (Tr. 134-176). In August 1996, plaintiff underwent an open reduction-internal fixation of the right ankle. (Tr. 134, 136-138). The ankle was found to have significant comminution of the articular surface of the tibia. Dr. Robert Bebout opined that she could end up with an ankle fusion in the future due to the potential for traumatic arthritis. (Tr. 143). By August 31, 1996, physical therapy progress notes indicate that plaintiff was feeling better and able to control her right foot, although she continued to exhibit a decreased range of motion and pain.[1] (Tr. 144-152). At this time, an EKG revealed sinus tachycardia with a heart rate of 106 and non-specific T-wave changes in the anterior leads. (Tr. 162). Ischemia could not be ruled out and the EKG was classified as borderline. (Tr. 162).

Records also indicate that plaintiff had a history of hypertension for which she was prescribed Atenolol and Aldactazide. (Tr. 140). At the hearing, plaintiff testified that she

---

[1]Between October 24, 1996, and November 1, 1996, plaintiff participated in outpatient physical therapy at Crawford Memorial Hospital. (Tr. 191-198). On November 1, an increased range of motion was noted with increased pain and decreased swelling in the right ankle. (Tr. 191).

still had pain from her surgery and that she must routinely elevate her leg during the day to eliminate swelling. (Tr. 278). Further, in 2001, plaintiff was treated in the emergency room for a headache. (Tr. 178-183). A CT scan of plaintiff's brain was normal. (Tr. 180).

On August 2, 2005, plaintiff underwent a general physical exam with Dr. Michael Westbrook. (Tr. 201-207). She complained of right ankle pain, pain in both knees, back pain that radiated into her right foot, and migraines. Dr. Westbrook noted swelling in plaintiff's right ankle along with pain and a decreased range of motion. (Tr. 203-204). She had no muscle atrophy and a full range of motion in her cervical and lumbar spine, shoulders, elbows, wrists, hands, hips, and knees. In addition, no joint abnormalities, deformities, instability, or muscle weakness was noted. Further, plaintiff had a normal gait and normal grip strength. (Tr. 205). She also could stand and walk without assistive devices and could walk on her heels and toes. (Tr. 205).

On August 22, 2006, plaintiff underwent a mental status examination with Dr. Patricia Walz, Ph.D. (Tr. 230-234). Plaintiff stated that she was unable to work due to the residuals of surgery to her right ankle. However, plaintiff indicated that she had last worked in 2002 and quit when her employer lost their lease and moved their business. She reported no history of mental illness or psychiatric treatment, no psychiatric hospitalizations, and no history of counseling or psychotherapy. Plaintiff did admit to feeling a little bit depressed, but denied suicide attempts, panic symptoms, or obsessive-compulsive symptoms. No current or past hallucinations, delusions, or paranoid thinking was reported, and there was nothing unusual noted about her stream of mental activity. Plaintiff also denied problems with attention or concentration. Dr. Walz estimated her IQ to fall within the low average

range. Plaintiff's behavior was not suggestive of a neuropsychological impairment. However, the Millon Clinical Multi-Axial Inventory was administered and indicated a negativistic (passive aggressive) personality with self defeating and schizoid personality features. Her profile suggested highly variable and unpredictable moods and a sense of resentment. Dr. Walz diagnosed plaintiff with dysthymia and personality disorder with passive-aggressive, self-defeating, and schizoid traits. She indicated that plaintiff's prognosis for significant improvement without treatment was poor, and was guarded with treatment due to limited insight and secondary gain. (Tr. 234).

Dr. Walz also completed a mental RFC assessment. (Tr. 235-236). She found plaintiff to have moderate limitations in the areas of maintaining attention and concentration for extended periods; performing activities within a schedule; maintaining regular attendance; being punctual; accepting instructions and responding appropriately to criticism from supervisors; getting along with co-workers and peers; maintaining socially appropriate behavior; responding appropriately to changes in the work setting; and setting realistic goals or making plans independently of others. (Tr. 236).

**Discussion**:

We first address the ALJ's assessment of plaintiff's subjective complaints. The ALJ was required to consider all the evidence relating to plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and, (5) functional restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ

may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. *Id*. As the United States Court of Appeals for the Eighth Circuit recently observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the record, we believe that the ALJ adequately evaluated the factors set forth in *Polaski*, and conclude there is substantial evidence supporting his determination that plaintiff's complaints were not fully credible. The testimony presented at the hearing as well as the medical evidence contained in the record are inconsistent with plaintiff's allegations of disability.

We note that the record does indicate that plaintiff complained of ankle, back, and knee pain. However, aside from the surgery and physical therapy she underwent immediately after her automobile accident in 1996, plaintiff did not seek medical treatment for ankle, back, or knee pain. *See Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999) (failure of claimant to maintain a consistent treatment pattern for alleged mental impairments is inconsistent with the disabling nature of such impairments). A general physical examination performed at the Commissioner's request revealed a decreased range of motion in plaintiff's right ankle and some swelling, but no other limitations or abnormalities. (Tr. 201-207). There were no other range of motion limitations, no atrophy, and no muscle weakness. Further, plaintiff indicated that she took over-the-counter medications to treat her pain. Again, aside from medication prescribed for plaintiff following surgery, there is no evidence in the record to show that she was ever prescribed pain medication. *See Haynes v. Shalala*,

7

26 F.3d 812, 814 (8th Cir. 1994) (lack of strong pain medication was inconsistent with disabling pain); *See Stout v. Shalala*, 988 F.2d 853, 855 (8th Cir. 1993) (pain which can be remedied or controlled with over-the-counter analgesics normally will not support a finding of disability). Had her pain been as severe as alleged, we believe that plaintiff would have sought medical treatment and prescription pain medication. Therefore, we find substantial evidence to support the ALJ's determination that, although severe, plaintiff's physical impairments were not disabling.

Likewise, there are no medical records, aside from the consultative evaluation of Dr. Walz, to indicate that plaintiff was suffering from a mental impairment. (Tr. 230-234). *See Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999) (failure of claimant to maintain a consistent treatment pattern for alleged mental impairments is inconsistent with the disabling nature of such impairments). However, even Dr. Walz's assessment does not support a finding of mental disability. While it is clear that plaintiff was suffering from some dysthymia and a possible personality disorder, Dr. Walz's evaluation makes clear that plaintiff is capable of performing some work-related activities with the appropriate mental limitations. Therefore, we find that substantial evidence support the ALJ's determination that plaintiff's mental impairment, even when coupled with her physical limitations, was not disabling.

Plaintiff contends that she did not seek medical treatment or medication because she was financially unable to do so. However, the lack of evidence that plaintiff sought low cost medical treatment from her doctor, clinics, or hospitals does not support her contention of financial hardship. *See Murphy v. Sullivan*, 953 F.3d 383, 386-87 (8th Cir. 1992).

8

Plaintiff's own reports concerning her activities of daily living also contradict her claim of disability. Plaintiff reported to Dr. Walz that she cared for her personal needs and grooming, and she could perform some light household tasks such as shopping, cooking, driving, and housework. (Tr. 16, 233). During her examination, Dr. Walz asked plaintiff if there were limits to what she could do, and plaintiff stated, "Not really, but I can't do a lot at once." (Tr. 233). On her supplemental interview outline, plaintiff stated that she prepared her own meals, and did the laundry and cleaning, though it took her longer to complete these tasks than normal. (Tr. 94). She also indicated that she took care of her daughter, stating, "I do normal things a parent does for a child." (Tr. 92). In addition, plaintiff reported that she went outside daily, went grocery shopping one to two times a month, paid bills, and read three to four times a week. (Tr. 95-96, 233). She further stated that she spent time with others, such as watching movies and going to church. (Tr. 96, 233). *See Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (ability to care for one child, occasionally drive, and sometimes go to the store); *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996) (ability to visit neighbors, cook, do laundry, and attend church); *Novotny v. Chater*, 72 F.3d at 671 (ability to carry out garbage, carry grocery bags, and drive); *Johnston v. Shalala*, 42 F.3d 448, 451 (8th Cir. 1994) (claimant's ability to read, watch television, and drive indicated his pain did not interfere with his ability to concentrate); *Woolf v. Shalala*, 3 F.3d 1210, 1213-1214 (8th Cir. 1993) (ability to live alone, drive, grocery shop, and perform housework with some help from a neighbor). Clearly, these activities are somewhat inconsistent with an allegation of disability.

9

Therefore, although it is clear that plaintiff suffers from some degree of impairments, she has not established that she is unable to engage in any and all gainful activity. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability); *Woolf v. Shalala*, 3 F.3d at 1213 (holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not support a finding of disabled). Neither the medical evidence nor the reports concerning her daily activities supports plaintiff's contention of total disability. Accordingly, we conclude that substantial evidence supports the ALJ's conclusion that plaintiff's subjective complaints were not totally credible.

Next, we consider the ALJ's determination that plaintiff can perform a range of sedentary exertional work. It is well settled that the ALJ "bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence." *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000). The United States Court of Appeals for the Eighth Circuit has also stated that a "claimant's residual functional capacity is a medical question," *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000), and thus, "some medical evidence," *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam ), must support the determination of the plaintiff's RFC, and the ALJ should obtain medical evidence that addresses the claimant's "ability to function in the workplace." *Nevland v. Apfel*, 2 04 F.3d 853, 858 (8th Cir. 2000). Therefore, in evaluating the plaintiff's RFC, *see* 20 C.F.R. § 404.154599(c), while not limited to considering medical evidence, an ALJ is required to consider at least some supporting evidence from a professional. *Cf. Nevland v. Apfel*, 204 F.3d at 858; *Ford v. Secretary of Health and Human Servs*., 662 F. Supp. 954, 955, 956

(W.D. Ark. 1987) (RFC was "medical question," and medical evidence was required to establish how claimant's heart attacks affected his RFC).

In the present case, the ALJ considered the medical assessments of two non-examining agency medical consultants, the assessment of a consultative psychologist, plaintiff's subjective complaints, and her medical records. On August 3, 2005, Dr. Stephen Whaley, a non-examining medical consultant, reviewed plaintiff's medical records. (Tr. 208-216). He concluded that plaintiff could frequently lift less than 10 pounds, frequently lift 10 pounds, stand and/or walk at least 2 hours in an 8-hour workday, and sit about 6 hours during an 8-hour workday. No postural, manipulative, visual, communicative, or environmental limitations were noted. (Tr. 208-216).

On October 18, 2005, Dr. Alice Davidson, another non-examining medical consultant, completed a physical RFC assessment. (Tr. 219-226). After reviewing plaintiff's medical records, she also concluded that plaintiff could frequently lift less than 10 pounds, frequently lift 10 pounds, stand and/or walk at least 2 hours in an 8-hour workday, and sit about 6 hours during an 8-hour workday. Dr. Davidson also determined that plaintiff could occasionally climb, balance, stoop, kneel, crouch, and crawl.

We also note Dr. Walz's assessment that plaintiff has moderate limitations in the areas of maintaining attention and concentration for extended periods; performing activities within a schedule; maintaining regular attendance; being punctual; accepting instructions and responding appropriately to criticism from supervisors; getting along with co-workers and peers; maintaining socially appropriate behavior; responding appropriately to changes in the work setting; and setting realistic goals or making plans independently of others. (Tr. 236).

11

However, we also note that plaintiff reported no significant mental complaints to Dr. Walz and denied any previous treatment, inpatient or outpatient, for mental related illnesses.

Although plaintiff contends that her condition requires her to elevate her ankle and prevents her from standing for more than five or ten minutes, there is no medical evidence to support this allegation. Although Dr. Westbrook did note some swelling in plaintiff's ankle, he did not conclude that any such limitations were necessary. *See Baldwin v. Barnhart*, 349 F.3d 549, 557 (2003) (physicians noted few abnormalities, and none of Plaintiff's independent physicians restricted or limited P's activities). Further, there has been no medical finding that plaintiff can stand no longer than five to ten minutes in an 8-hour workday. As such, we do not find error in the ALJ's failure to include this in his RFC assessment. *See McGeorge v. Barnhart*, 321 F.3d 766, 769 (8th Cir. 2003) (ALJ properly limited the RFC determination to only impairments and limitations he found credible based upon his evaluation of the entire record).

Therefore, given plaintiff's lack of treatment for both her physical and mental impairments, we find substantial evidence to support the ALJ's determination that plaintiff can occasionally lift ten pounds; stand and walk for a total of two hours and sit for a total of six hours; and perform occasional postural activity. (Tr. 16). Substantial evidence also supports the ALJ's conclusion that plaintiff has slight limitations in completing a normal workday or workweek; accepting instructions; responding appropriately; getting along with coworkers and peers; and responding appropriately to work changes, and would have moderate limitations in maintaining concentration, maintaining regular attendance, being

punctual, and interacting appropriately with the public. (Tr. 16). Accordingly, the ALJ's RFC determination will stand.

We also find that substantial evidence supports the ALJ's finding that plaintiff can perform work as an assembler, telephone solicitor, and charge account clerk. Based on plaintiff's age, education, and RFC, the VE testified that such an individual could perform other sedentary work such as an assembler with 1,400 positions in the state and 105,000 positions in the national economy; telephone solicitor with 23 jobs in the state and 39,000 in the national economy; and, charge account clerk with 1,274 jobs in the state and 243,000 in the national economy. (Tr. 295-296). At the hearing, the VE testified that these three jobs were classified as sedentary work. (Tr. 296). The ALJ relied on the VE testimony to find that there were a significant number of sedentary jobs available in the national economy that plaintiff could still perform. (Tr. 18). *See Long v. Chater*, 108 F.3d 185, 188 (8th Cir. 1997); *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996). Accordingly, we find substantial evidence to support the ALJ's determination that plaintiff could still perform work that exists in significant numbers in the national economy.

Plaintiff contends that the ALJ erred by failing to ask the vocational expert whether her testimony was in conflict with the Dictionary of Occupational Titles ("DOT"). However, the three jobs that the VE identified are in fact classified as sedentary work in the DOT. *See* DOT, § 205.367-014, § 299.357-014, § 739.684-014, *at* www.westlaw.com  The plaintiff does not assert that a conflict exists and does not point to any apparent conflict in the record. She merely contends that the ALJ's failure to ask the questions is a sufficient basis for reversal. We do not agree. Because no conflict exists, the ALJ's failure to ask the question

13

was harmless, and remand is not required. *See Renfrow v. Astrue*, 496 F.3d 918, 921 (8th Cir. 2007)(holding that the ALJ's error in failing to ask the VE about possible conflicts between her testimony and the DOT was harmless because there appeared to be no conflict between the VE and the DOT).

**Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

DATED this 26th day of January 2009.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)